UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TAMMY S. OSBY,

         Plaintiff,

  v.

THE CITY OF NEW YORK;
NEW YORK CITY EMPLOYEES
RETIREMENT SYSTEMS,

         Defendant.

**MEMORANDUM AND ORDER**
22-cv-7643 (LDH) (LB)

---

LASHANN DEARCY HALL, United States District Judge:

  Tammy Osby ("Plaintiff"), proceeding pro se, commenced this action against the City of New York and New York City Employees Retirement Systems ("NYCERS") (together, "Defendants"), asserting claims of discrimination and retaliation under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act ("Title VII"), and the Fair Labor Standards Act ("FLSA").  Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint in its entirety.

## BACKGROUND

  Plaintiff is a former Probation Officer who retired from the New York Department of Probation (the "DOP") after suffering a knee injury while on the job. (Am. Compl. at 6, ECF No. 20.)  She has received a disability retirement pension since June 5, 2019. (*Id.*)  Retirees who receive a disability retirement pension are required to submit an income verification form ("Form 351") annually in order to continue receiving benefits. (*Id.* at 7.)  Form 351 is to be mailed by NYCERS to retirees at the beginning of each year, and retirees are given 60 days to complete and return the form. (*Id.*)

  Plaintiff's disability pension checks were suspended on three occasions, April 30, 2021, February 28, 2022, and March 31, 2022, due to a failure to report her income. (*See id.*; Decl. of

Nichola Patrick ("Patrick Decl.") ¶¶ 4-5, ECF No. 25.)  After the first suspension in 2021, Plaintiff was told by a NYCERS supervisor that she would not need to resubmit her income verification. (Am. Compl. at 6.)  Plaintiff's April 2021 pension check was reinstated on May 12, 2021, and her pension payouts resumed.  (Patrick Decl. ¶ 6.)  In 2022, Plaintiff received another request for income verification. (Am. Compl. at 7.)  Shortly thereafter, Plaintiff's pension payment was again suspended for failure to report her income. (*Id*.)  Plaintiff's suspended checks from February and March 2022 were reinstated on March 25, 2022.  (Patrick Decl. ¶¶ 6–7.)  According to the amended complaint, in 2022, Plaintiff had not been given the 60-day window from her receipt of Form 351 before her checks were suspended.  (Am. Compl. at 7.)

In addition to the suspension of her disability pension checks, Plaintiff alleges that NYCERS impermissibly deducted money from the checks she did receive for a health care benefit that she had not intended to opt into.  (*See id*.)  Plaintiff alleges that upon her retirement, when she went to pick up her last paycheck, she was told by a payroll supervisor that submitting the health care benefit form would only "reactivate [her] health insurance" that had been suspended by the DOP.  (*Id*.)  Plaintiff was not aware that such reactivation would involve continuous deductions. (*See id*.)  Despite Plaintiff "submit[ing] proof" that she is owed a refund, NYCERS "continues to use the inaccurate information provided by [her] hostile former employer."  (*Id*.)

Prior to her retirement, Plaintiff filed several complaints with the Equal Employment Opportunity Commission ("EEOC") against the DOP, alleging disability discrimination and a hostile work environment. (*Id*.)  A lawsuit against the DOP and the City of New York is currently pending in the Southern District of New York.  (*Id*.)  *See Osby v. City of New York et al*, No. 23-cv-01731 (S.D.N.Y.).  Plaintiff believes that, by suspending and deducting money from her checks, NYCERS has been "following the orders or directions of [her] former employers or their affiliates"

2

to continue to discriminate and retaliate against her in her retirement. (*Id*.) Plaintiff has never been employed by NYCERS. (*Id*.)

Plaintiff asks the Court to order Defendants to refund the money deducted from her checks, totaling $4,283, and to assure in writing "with an apology" that her disability checks will not be suspended again. (*Id*. at 8-9.) Plaintiff also seeks $10,000 in damages for emotional distress.

## STANDARD OF REVIEW

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Iqbal*, 556 U.S. at 678. While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the [c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the [c]ourt must merely determine whether the complaint itself is legally sufficient, and in doing so, it is well settled that the [c]ourt must accept the factual allegations of the complaint as true." *Id*. (internal citation omitted).

Moreover, where, as here, a plaintiff is proceeding *pro se*, her pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This is "particularly so when the *pro se* plaintiff alleges that her civil rights have been

3

violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  Still, "even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'"  *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555)).

## DISCUSSION

Plaintiff brings claims against NYCERS and the City of New York under 42 U.S.C §§ 12112–17, 42 U.S.C. § 2000e-5(b), 42 U.S.C. § 2000ff-6, and 29 U.S.C. § 211, which correspond to employment discrimination provisions under Title I of the ADA and Title VII of the Civil Rights Act, as well as the "Collection of Data" provision under the FLSA.  (Am. Compl. at 4–5.)  As a threshold matter, to succeed on a claim under any of these statutes, a Plaintiff must first allege that Defendants are her employer.  Indeed, it is well-settled law that the existence of an employer-employee relationship is a primary element of employment discrimination claims under Title VII and the ADA, and of any claim brought under the FLSA.  *See Felder v. United States Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022) (quoting *Gulino v. N.Y.S. Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006)) ("It has long been understood by our Court that 'the existence of an employer-employee relationship is a primary element of Title VII claims.'"); *Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 768 (2d Cir. 2009) (holding that because the "appellant did not allege that either the EEOC or the Railroad Retirement Board was his employer, he could not state a claim against them under the provisions of Title VII, the Americans with Disabilities Act, and the ADEA, which apply only to discriminatory practices by an employer."); *Perez Perez v. Escobar Constr., Inc.*, No. 23-1240, 2024 WL 3594325, at *2 (2d Cir. July 31, 2024) ("[T]o state a claim under the FLSA . . . Plaintiffs must allege facts sufficient

4

to plausibly show that one or more of the Defendants was their employer."). This rule ultimately serves to defeat Plaintiff's claim against NYCERS. That is, in the amended complaint Plaintiff explicitly states that she "never worked for NYCERS." (Am. Compl. at 6.) That Plaintiff includes the allegation that NYCERS "follow[ed] the orders or directions of [her] former employers or their affiliates" does not somehow transform her relationship with NYCERS into an employment one. (*Id*.)

Plaintiff's claims against the City of New York fare no better. All of the conduct about which Plaintiff complains, which is all grounded in the administration of her disability checks after her retirement, occurred after Plaintiff's employment with the DOP. (*Id*.) In other words, Plaintiff fails to allege the existence at an employer-employee relationship between her and the City of New York at the time the challenged conduct took place. Plaintiff's claims against the City of New York must also be dismissed.[1]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's complaint is DISMISSED.

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted)). But a court has inherent power to dismiss without leave to amend or replead where amendment would be futile.

---

[1] To the extent that Plaintiff's complaint, read very liberally, asserts claims for a hostile work environment, discrimination, or retaliation from the DOP, Plaintiff cannot litigate those claims here, given that these claims are already pending in the Southern District of New York against the City of New York. See Am. Compl., *Osby*, No. 23-cv-01731 (S.D.N.Y.); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) ("[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."). Because Plaintiff cannot establish any employment relationship with the City of New York or NYCERS, her claims must be dismissed.

*Hill v. Curcione*, 657 F. 3d 116, 123-24 (2d Cir. 2011).  Because the Court concludes that leave to amend would be futile, the Court declines to grant Plaintiff leave to amend her complaint.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and *in forma pauperis* status is therefore denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully directed to enter judgment, mark this action closed, and mail a copy of this order to the *pro se* Plaintiff.

    SO ORDERED.

Dated:  Brooklyn, New York  
        September 30, 2024

/s/LDH  
LaSHANN DeARCY HALL  
United States District Judge